IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **RAMIRO HERNANDEZ A/K/A** **RAMIRO HERNANDEZ LLANAS,** § § Petitioner, § § § -VS- § § § **RICK THALER**, Director, § Texas Department of Criminal Justice, § Correctional Institutions Division, § § Respondent. § | CIVIL NO. SA-08-CA-805-XR  *CAPITAL CASE* |

**REPLY TO RESPONDENT'S RESPONSE TO PETITIONER'S
MOTION FOR AN EVIDENTIARY HEARING
ON GROUND B**

I.      INTRODUCTION.

Petitioner Ramiro Hernandez Llanas moved this Court for an evidentiary hearing on his claim that trial counsel's failure to investigate and present compelling mitigation evidence during the penalty phase of Petitioner's trial deprived him of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel.  As his motion establishes, Petitioner was diligent in his efforts to factually develop this claim in state court, for he repeatedly sought and was repeatedly denied a hearing on this claim in state court.  As his motion also demonstrates, his factual allegations, if true, entitle him to relief.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to habeas relief.")  Nowhere in its response does Respondent dispute either of these contentions, and indeed, after citing them *without* disagreement, Respondent simply dismisses them as "unavailing" after *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  Respondent Thaler's Response in Opposition to Motion for Evidentiary Hearing (hereinafter Response) at 4.  But *Pinholster* is not so sweeping as Respondent claims, nor is the law so irrational.

II.     RESPONDENT MISCHARACTERIZES THE HOLDING OF *PINHOLSTER*.

According to Respondent, because "the claim on which [Petitioner] seeks an evidentiary hearing was resolved by the state court on the merits[,] this Court is prohibited from granting an evidentiary hearing on [his] ineffective-assistance-of-counsel claim." Response at 5; *see also* Response at 1 ("If a claim has been adjudicated on the merits by a state court . . . a federal habeas court is prohibited from . . . granting an evidentiary hearing."). Respondent cites page 1398 of the *Pinholster* opinion as support for this proposition, but nowhere on that page does the *Pinholster*

opinion *even discuss* the question of when an evidentiary hearing should be granted.[1] Indeed, the Court reserved both the specific question of whether, under the facts of *Pinholster*, the district court was wrong to have held an evidentiary hearing and the more general question of whether a court must conduct a § 2254(d) analysis before determining whether to hold such a hearing. *Pinholster*, 131 S. Ct. at 1411 n.20 ("For that reason, we need not decide whether § 2254(e)(2) prohibited the District Court from holding the evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied.").

Thus, with respect to the question of whether to hold an evidentiary hearing, *Pinholster* leaves intact the precedent of this circuit. Under that precedent, Petitioner is entitled to a hearing:

> When there is a factual dispute[ which,] if resolved in the petitioner's favor, would entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, *a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing*.

*Hughes v. Johnson*, 191 F.3d 607, 630 (5th Cir. 1999) (emphasis added). Because Respondent does not contest either that (1) through no fault of Petitioner, the state denied him a hearing on this claim; or that (2) if the factual dispute is resolved in his favor, Petitioner is entitled to relief, Petitioner is therefore entitled to a hearing.[2]

---

[1]The dissents *in the court of appeals* did discuss whether the hearing should have been granted, but the Supreme Court granted certiorari not on § 2254(e), but on "[f]irst, whether review under § 2254(d)(1) permits consideration of evidence introduced in an evidentiary hearing before the federal habeas court[, and s]econd, whether the Court of Appeals properly granted Pinholster habeas relief on his claim of penalty-phase ineffective assistance of counsel." *Pinholster*, 131 S. Ct. at 1398.

[2]As noted in in the Motion for an Evidentiary Hearing on Ground B, a hearing is not necessary if this court determines—as it should—that, applying Supreme Court precedent to the facts *as found by the state court*, that court's determination that trial counsel's performance was competent was an unreasonable one. As laid out in the Petition at 78–119, and the Reply at 62–81, even assuming that the facts credited by the state court are true, trial counsel did not

## III. PETITIONER IS ENTITLED TO MERITS REVIEW UNDER 28 U.S.C. § 2254(d).

As discussed above, *Pinholster* does not prescribe new rules for when an evidentiary hearing should be held. What *Pinholster* does address is how a federal court, having conducted an evidentiary hearing, should proceed. With respect to that question, *Pinholster* "hold[s] that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398. Thus, should this Court grant Petitioner an evidentiary hearing, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2) before he is entitled to merits review of his claim—and he cannot rely upon facts adduced at the hearing satisfy § 2254(d)(1). If, however, Petitioner can meet the requirements of either § 2254(d)(1) or (d)(2), then facts adduced at the hearing may be considered in this Court's *own* determination of the merits of Petitioner's claim for the purposes of § 2254(a).

### A. The State Court Proceedings Resulted in a Decision That Was Contrary To, and Involved an Unreasonable Application Of, Clearly Established Supreme Court Precedent.

Under 28 U.S.C. § 2254(d)(1), this Court is free to grant relief if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This standard is met the by the state court's determination that counsel performed competently. Even taking trial counsel at their word, they failed to do any significant investigation of petitioner's family and social history. Lead counsel Pickell claimed to have done two things: (1) sent an investigator to Mexico who spoke to Petitioner's mother and learned that she did not want to come to her son's trial; and

---

conduct an adequate investigation into Petitioner's family and social history, and therefore no deference is due their decision not to present his horrific childhood in mitigation. Petitioner files this Motion and Reply out of an abundance of caution.

(2) sent the same investigator to speak to one of Petitioner's sisters, Adelita, who lived in Texas and was hostile to Petitioner. Co-counsel Garcia reported his own personal efforts, equally paltry, which were limited to: (1) speaking over the phone to Petitioner's mother in Mexico, who told him the same thing she had told the investigator; (2) speaking over the phone to Petitioner's sister Yolanda, who lived in Mexico, about Petitioner's "background"; and (3) speaking to Adelita, the same sister to whom the investigator had spoken.

The state court had facts before it that should have led it to discount the accuracy of these efforts, as discussed below, but even if trial counsel had done what they claimed, three witnesses does not a mitigation investigation make. Petitioner will not repeat all of his arguments here, but the Petition pp. 97–119 and the Reply pp. 63–81 contrast trial counsel's efforts with case law from both the Supreme Court and this circuit, demonstrating that no reasonable application of Supreme Court precedent would permit the decision reached by the state court. Briefly, it cannot be disputed that "counsel should consider presenting . . . [the defendant's] medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11); *Adams v Quarterman*, 324 F. App'x. 340, 345–46 (5th Cir. 2009) (quoting *Wiggins*, 539 U.S. at 521). As the Fifth Circuit held with respect to the virtually identical investigation conducted in *Adams v. Quarterman*:

> [Trial counsel] failed to make even the most cursory inquiry into the existence of potentially mitigating evidence in Adams's background. The contrary state habeas court and TCCA rulings are not merely incorrect; both are contrary to and unreasonable interpretations of clearly established federal law.

*Id.* at 350 (finding counsel's family history investigation inadequate where counsel spoke to three family members); *cf. Bobby v. Van Hook*, 130 S. Ct. 13, 18–19 (2009) (per curiam) (holding performance not deficient when counsel gathered a substantial amount of information and then made a reasonable decision not to pursue additional sources).[3]

### B. The State Court Proceedings Also Resulted in a Decision That Was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in That Proceeding.

Under 28 U.S.C. § 2254(d)(2), this Court may grant relief if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Because Petitioner presented the state court with evidence that contradicted trial counsel's affidavits concerning their investigative activities, the state court was unreasonable to make factual determinations relating to the performance prong of *Strickland v. Washington*, 466 U.S. 668 (1984), without holding a hearing and permitting Petitioner to present evidence and to cross-examine trial counsel. Indeed, under Texas law, "[i]f the convicting court determines that controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, the court *shall* enter an order . . . designating the issues of fact to be resolved and the manner in which the issues shall be resolved." Tex. Code Crim. P. art. 11.071(9)(A) (emphasis added).

---

[3]Petitioner's briefs also set forth the horrifying childhood Petitioner endured, which included abject poverty, exposure to neurotoxins through living on a toxic waste dump, extreme physical abuse from both parents, schooling that ended in the third grade, and cognitive and adaptive functioning deficits so plain that they were notable even in his deprived environment. The state court made no determination concerning prejudice, perhaps because the unpresented facts so clearly establish prejudice; the Reply at 72–81 cites Supreme Court case law that renders unreasonable any determination that Petitioner was not prejudiced by counsel's failure to investigate.

Trial counsel Steven Pickell claimed that he hired Santiago Gutierrez and instructed him to travel to Mexico "in an effort to contact family, friends, and acquaintances of Mr. Hernandez regarding such things as his childhood, background, living conditions, past criminal acts and general background character." State's Original Answer to Post-Conviction Application for Writ of Habeas Corpus Exh.1; Affidavit of Steven Pickell. Pickell further stated that Gutierrez interviewed Adelita Hernandez Llanas, Petitioner's sister, who resided in Texas. *Id.* Pickell's co-counsel, J.A. Garcia, stated his "understanding" of Gutierrez' trips to Mexico, and claimed that he personally spoke to two family members by phone: Petitioner's mother and sister, Yolanda.. State's Original Answer to Post-Conviction Application for Writ of Habeas Corpus Exh.2, Affidavit of J.A. Garcia. Garcia claimed that he described Petitioner's situation to both of them and that neither wanted to testify at trial. *Id.*

Pickell's account of his investigator's activities was in conflict with the account of two siblings who live near Petitioner's mother, Jorge and Yolanda, both of whom signed affidavits stating that no one from the defense team came to Mexico to interview them. *See* Original Post-Conviction Application for Writ of Habeas Corpus, Exh. I, Affidavit of Yolanda Hernandez Llanas.[4] Moreover, although the literal wording of co-counsel Garcia's account of his own activities is not contradicted by other evidence, both his time records and the affidavit of Petitioner's sister that was before the state court, if credited, would make it clear that his Garcia's affidavit omits crucial facts, thereby making his limited "investigation" sound at least slightly more diligent than it was. Investigation, to be effective at all, has to be timely. Garcia's affidavit neglects to say when he spoke to Petitioner's mother and sister, but his billing records do not reflect any timely efforts to contact

---

[4]Undersigned counsel's investigation has revealed no one in Mexico other than Petitioner's mother—not family, not friends, not neighbors, not school teachers and not employers—to whom Gutierrez spoke

Petitioner's family. Exh. 17, Billing Records of A.J. Garcia. According to those records, he drafted a letter to the family on January 26, 2000—*after* jury selection had begun. *Id.* at 7. Moreover, the content of this letter,[5] which is addressed to the entire "Hernandez Family," makes it clear that this is his first communication with the family. Exh. 16, Letter from Trial Counsel ("By way of this letter, we want to notify you all that we are the appointed attorneys to defend Ramiro Hernandez Llanas, who is accused of having committed a crime for which he is now being tried in the city of Bandera, Texas."). Petitioner's sister Yolanda reported that she did indeed receive a phone call from trial counsel—but that counsel called after Petitioner's trial had begun, and without clear explanation, informed her that Petitioner's mother had to travel to Texas immediately.

Despite these significant disputes over what trial counsel and their investigator had actually done, the lower court did not designate any contested factual issues for determination, and its failure to *recognize* the existence of a factual dispute that needed resolution was unreasonable. Moreover, it would also have been unreasonable factfinding to resolve these questions without permitting cross-examination. *See Adams v. Quarterman*, No. 02-2042, 2006 U.S. Dist. LEXIS 97199, at *28–32 (N.D. Tex. Sept. 12, 2006) (noting the appropriateness of an evidentiary hearing where the state court's legal conclusion that counsel conducted meaningful mitigation investigation was predicated on affidavits that were not subject to live cross-examination during any hearing), *adopted*, 2006 U.S. Dist. LEXIS 70994 (N.D. Tex. Sept. 29, 2006), aff'd, 324 F. App'x 340 (5th Cir. 2009). Finally, under all of the circumstances, it was an unreasonable determination of fact to credit the timeliness of Garcia's efforts when both his billing records and a letter he himself wrote demonstrate that the

---

[5]This letter was attached to the motion to the TCCA for an evidentiary hearing on Petitioner's IAC claim.

limited actions he took were taken too late to make any difference at all in the formation of strategy.

Thus, this Court may hold an evidentiary hearing and consider Petitioner's claim on the merits, both because the state court decision meets the standard of 28 U.S.C. § 2254(d)(1), and because it meets the standard of 28 U.S.C. § 2254(d)(2).

## CONCLUSION

Wherefore, this court should grant Petitioner relief on this claim; or grant his motion for an evidentiary hearing and the time and tools to conduct discovery relevant to his ineffective assistance of counsel claim; and/or and grant whatever other such relief as is appropriate.

Respectfully submitted,

/s/ Sheri Lynn Johnson

SHERI LYNN JOHNSON
108 Myron Taylor Hall
Cornell Law School
Ithaca, New York 14853
(607) 255-6478

/s/ Naomi E. Terr

NAOMI E. TERR
Texas Defender Service
1927 Blodgett Street
Houston, Texas 77004
(713) 222-7788

May 4, 2011

**CERTIFICATE OF SERVICE**

I certify that on May 4, 2011, a copy of the foregoing pleading was electronically served on Tina Miranda, counsel for the Respondent, by filing the document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

/s/ Naomi E. Terr

_____

Naomi E. Terr