IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RAMIRO HERNANDEZ LLANAS )<br>        *Petitioner*, )<br>)<br>v.  )<br>)<br>RICK THALER, Director, )<br>Texas Department of Criminal Justice, )<br>Correctional Institutions Division, )<br>)<br>        *Respondent*. )<br>_____) | CIVIL ACTION NO. SA-08-CA-805-XR |

**MOTION FOR ORAL ARGUMENT BASED ON EGREGIOUS FACTUAL ERRORS IN THE ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**

Undersigned counsel for Petitioner are aware of this Court's personal commitment to integrity and professional ethics, and believes that had this Court been apprized of the indisputable, highly material errors and mischaracterizations made by the law clerk who assisted this Court in drafting its Order denying the Petition for a Writ of Habeas Corpus, this Court would have corrected those errors. Petitioner also believes that such correction would have changed this Court's ultimate conclusion on Petitioner's *Atkins v. Virginia*, 536 U.S. 304 (2002), claim. However, Petitioner does not ask this Court for the time necessary to argue the merits of this claim, but only for the time necessary to address the indisputable factual errors contained in the Order. Undersigned counsel will not seek any compensation for their time or reimbursement of expenses connected with this hearing, but at their own expense seek the opportunity to address this Court in person.

Petitioner sets forth below the two most indisputably erroneous findings, both of which purport

1

to describe and adopt state court credibility determinations adverse to Petitioner. Both are flatly contradicted by the pages of the trial court's Supplemental Findings of Fact and Conclusions of Law on Post-Conviction Application for Writ of Habeas Corpus (hereinafter referred to as "State Court Order") attached as an Appendix to this motion.[1] Moreover, these errors are especially inexplicable given that Respondent's brief does not in any way advocate them.

## I. CONTRARY TO THIS COURT'S ORDER, THE STATE COURT *REFUSED* TO FIND THE STATE'S EXPERT MORE CREDIBLE THAN PETITIONER'S EXPERTS.

This Court's order states that "the state habeas trial court reasonably gave more credence to Dr. Coons' opinions regarding petitioner's lack of adaptive functioning deficits over the opinions of Dr. Puente." Order at 78. But the state court did no such thing. In fact, at *four* separate points in its proposed order, the State specifically asked the state habeas court to disparage Dr. Puente's credibility, *and at all four points, the court crossed out the language making that finding.* See State Court Order at 11, Appendix at 1 (crossing out and initialing the striking out of a paragraph that criticized Dr. Puente's methodology, and concluded "This court did not find Dr. Puente to be credible"); State Court Order at 15, Appendix at 3 (crossing out and initialing the striking out of the sentence "The court finds that Dr. Puente's opinion regarding the applicant's malingering to lack credibility"); State Court Order at 17, Appendix at 4 (crossing out and initialing the striking out of the statement, "In summary, this Court finds Dr. Coons' opinion to be more credible and trustworthy than those of Dr. Puente and Dr. Martinez."); State Court Order at 17–18, Appendix at 4–5 (crossing out

---

[1] Petitioner's Motion to Alter or Amend the Judgment lays out a total of eleven clear factual errors, and Petitioner seeks oral hearing on all of those errors, but limits argument below in support of his request for oral argument to the two errors that are contrary to the literal text of the state court order.

and initialing the striking out of the sentence "Dr. Puente improperly applied the law in his analysis by considering adaptive behavior only prior to 18 years of age to the exclusion of current behavior, thus making his opinion unreliable.").

## II. CONTRARY TO THIS COURT'S ORDER, THE STATE COURT *REFUSED* TO FIND THE LAY WITNESSES' TESTIMONY CONCERNING PETITIONER'S SUBSTANTIAL ADAPTIVE FUNCTIONING DEFICITS NOT CREDIBLE.

According to the Order in this case, "Petitioner failed to present the state habeas trial court with any credible testimony from independent third parties with personal knowledge of petitioner's developmental milestones or any documentation from reliable independent sources addressing petitioner's achievement or failure to achieve developmental childhood milestones. . . , [and consequently] *the state habeas trial court reasonably found the testimony of petitioner's siblings and neighbor regarding petitioner's childhood to be incredible.*" Order at 79–80. The Order further asserts that "The state habeas trial court reasonably relied upon the information contained in the November, 2002 statement of Adelita Hernandez regarding petitioner's developmental years when it rejected petitioner's *Atkins* claims." *Id*. at 67 n.153. The Order then states that in contrast to that affidavit, the testimony of Petitioner's siblings and a neighbor during the state court evidentiary hearing "are so extreme as to defy credibility." *Id.* However, these assertions about the state court credibility findings of the Petitioner's lay witnesses, like the assertions regarding the credibility of his expert witnesses, are simply false. On the contrary, the state habeas trial court *specifically rejected* proposed findings by the State crediting Adelita Hernandez's affidavit and determining that the testimony of Petitioner's relatives was not credible. The State proposed the following language:

The court finds that the testimony of the above relatives of the applicant is not entirely

credible as the demeanor exhibited indicates an attempt to assist the applicant's position, with the exception of Adelita who described the basis for her testimony being an attempt to heal a breach with the family over this issue. Each of these witnesses was interviewed prior to hearing by defense expert, Dr. Antonio Puente.

But rather than endorsing that proposed finding, the state court judge crossed out the entire paragraph and initialed that he struck it out. State Court Order at 12, Appendix at 2.

The nine other significant factual errors relating to Petitioner's mental retardation claim require longer exposition, but corroborate the need for an oral hearing before an Article III judge.

## III. CONCLUSION

Wherefore, this Court should grant oral argument of Petitioner's Motion to Alter or Amend the Judgment.

Respectfully submitted,

SHERI LYNN JOHNSON
Myron Taylor Hall
Cornell Law School
Ithaca, NY 14853
607 255 6478

NAOMI TERR
1927 Blodgett Street
Houston, Texas 77004
713 222 7788

By: /s/ Naomi Terr
Counsel for Petitioner

October 24, 2011

## CERTIFICATE OF CONFERENCE

I certify that on October 21, 2011, I conferred with Ellen Stewart-Klein, counsel for Respondent. Ms. Stewart-Klein stated she opposes the filing of this motion.

s/ Naomi E. Terr
_____

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2011, I electronically filed the foregoing with the Court using the ECF system which sent notification of the filing to Sheri Johnson, co-counsel for the Petitioner, and Ellen Stewart-Klein, counsel for the Respondent.

s/ Naomi Terr
_____

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAMIRO HERNANDEZ A/K/A RAMIRO HERNANDEZ LLANAS,<br><br>Petitioner,<br><br>V.<br><br>RICK THALER,<br>Director, Texas Department of Criminal Justice, Correctional Institutions Division,<br><br>Respondent. | § § § § § § § § § § § § § | CIVIL NO. SA-08-CA-805-XR<br><br>**DEATH PENALTY CASE** |

## ORDER

This Court has reviewed **Petitioner's Motion for Oral Argument.** It is hereby ORDERED that Petitioner's Motion is GRANTED. **ORAL ARGUMENT** is set for _____.

Entered in San Antonio, Texas this _____ day of _____, 2011.

                                                                                         Xavier Rodriguez
                                                                                        Federal District Judge

# APPENDIX

y.   State writ counsel further requested a sum of $9,500 for the services of a psychologist, Dr. Antonio E. Puente, who resides in North Carolina, apparently because of his credentials as well as his ability to speak Spanish.

z.   The court finds that the sum of $1,000 was authorized as an initial disbursement as to this request. (Applicant's Exhibits "E" and "F"). No further requests were made by counsel in this regard, and counsel did not advise the court of any efforts on behalf of the applicant to obtain the services of any Spanish-speaking, qualified expert in the State of Texas.

aa.  The court finds that the applicant had sufficient resources awarded to locate a qualified expert in the State of Texas to conduct the examination sought, however no indication of such effort was made to the court. The applicant was not entitled to the expert of his choosing but rather to qualified expert assistance. See Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087 (1985).

bb.  ~~The court finds that the affidavit of Dr. Puente, attached to the~~ Petition as Applicant's Exhibit "B," contained a "preliminary conclusion" that was subject to conjecture, and that was ~~not~~ facially supported by the evidence presented ~~at the trial~~. The opinions expressed therein concerning ~~the alleged~~ inappropriate procedures and testimony ~~by the~~ defense expert witnesses is without meaningful foundation and amounts to speculation after the fact. This court did ~~not find Dr. Puente's opinions to be credible.~~

2.   The Post-conviction Hearing Regarding the Issue of Mental Retardation

a.   According to the testimony of Jorge Hernandez-Llanas (applicant's brother) [V 3, pp 11-111], Juan M. Artiago Espiro (a neighbor of the applicant while living in Mexico) [V 3, pp 112 - 142], Adelita Hernandez Llanas (applicant's sister) [V 4, pp 230-291] and Yolanda Hernandez Llanas (applicant's sister) [V 4, pp 293-317], the applicant was raised in Mexico under very poor conditions near a public landfill. The residence of the family of the applicant, consisting of nine other children and the parents, was of poor quality. The children were required to work in the landfill in order to subsist. The applicant was abused physically by both parents, especially the mother. He did not like to bathe, did not follow simple instructions well, gambled away his money, did not participate in sports due to lack of ability and learning the rules, was made fun of by others, quit school after the 3rd grade with poor achievement. Also, identified were several documents, some of which were identified as being the same handwriting as the applicant, written from the Kerr County Jail, based on his Jorge's recollection and comparison of same with letters received from the applicant while the applicant was in the penitentiary. State's Exhibit Nos. 1 and 2, V

3, p 41).

a-1. The witness Adelita Hernandez Llanas stated that, although she was not clear on the meaning of mental retardation when she signed it, the facts contained in her earlier affidavit were actually true, and that she was trying to repair a breach with her family members who were upset with her for filing said affidavit. (V 4, pp 271-273; 291). In her affidavit, Adelita Hernandez Llanas had stated that during the applicant's childhood years when she lived at home with him, he functioned like a person of average intelligence, cared for himself, bathed and dressed in clean clothes, had no problem managing money, and dropped out of school at the fifth grade level. See Applicant's Exhibit No. 7 [V 6, p 12); V 4, p 269).

a-2. Yolanda Hernandez Llanas described applicant's younger years at home and perceived learning problems, testified that the applicant could not follow directions, and that he would throw ingredients together and was a bad cook. (V 4, p 307). Her testimony concerning observations of the applicant's homelife was based on experiences prior to his age 9, at which time she moved from the residence. (V 4, p 310).

a-3. The Court finds that the testimony of the above relatives of the applicant is not entirely credible as the demeanor exhibited indicates an attempt to assist the applicant's position, with the exception of Adelita who described the basis for her testimony being an attempt to heal a breach within the family over this issue. Each of these witnesses was interviewed prior to hearing by the defense expert, Dr. Antonio Puente. (V 4, p 126).

58A

b. Dr. Gilbert Martinez, a psychologist who had testified at the original trial of the applicant, testified at the writ hearing that the applicant's intelligence at the time of his original examination was in the mentally retarded range, however he indicated that he had not diagnosed the applicant with mental retardation because he did not have evidence regarding his lifelong adaptive functioning. (V 3, pp 176-177).

   1. Dr. Martinez stated that he had destroyed all of his raw data relating to said examination. (V 3, p 180). In discussing the respective scores for psychological tests performed at the penitentiary and by Dr. Martinez prior to the trial (scores of 83 and 57, respectively), Dr. Martinez stated that a possible explanation may deal with the issue of depression on the part of the applicant. (V 3, p 184, 186; V 4, p 13). He indicated that he had never attempted, at the time of his original testing or subsequently, to review the testing administered at the penitentiary resulting in

5. According to Dr. Puente, a retarded person does not necessarily act retarded all the time, in noting the applicant's use of multi-syllable words in conversation. (V 4, p 169). By contrast, he noted that the applicant scored in the one percentile category of the general population on the Digit Span test. (V 4, p 178). As to the Ruff Two and Seven Selective Attention Test, Dr. Puente noted that it was not scored, although the applicant scored near the 100% level. (V 4, pp 179-181). The court finds that applicant's conversation and communication skills are inconsistent with a diagnosis of mental retardation and declines to find Dr. Puente's explanations to be credible.

6. Dr. Puente testified that he did not believe malingering on the part of the applicant was present, noting that if the applicant faked him out the book should be closed. (V 4, pp 181-182). Although he disagreed with the assessment, Dr. Puente did note that Dr. Cantu, in examining the applicant prior to the original trial, determined malingering to be a factor. (V 4, p 220). ~~The court finds that Dr. Puente's opinion regarding applicant's malingering to lack credibility.~~ SB/s

7. Dr. Puente testified that the third prong of the test for mental retardation deals with current adaptive behavior, as opposed to behavior prior to 18 years of age, although he focuses evaluation on age pre-18 circumstances. (V 4, pp 189-190). Dr. Puente testified that he discounted various factual accounts by witnesses dealing with the applicant's actions prior to being arrested and identified as not being significant indicators of adaptive behavior. (V 4, pp 190-205). Dr. Puente testified that the applicant could not drive, although he subsequently testified that the applicant had indeed told Dr. Puente that he, the applicant could drive a car. (V 4, pp 215; 223).

d. Kerr County Sheriff Rusty Hierholzer testified that the applicant was incarcerated in confinement cells with no roommates during his entire stay at the Kerr County Jail, and during the period when certain written notes were passed bearing the applicant's name. (V 5, pp 3-5). Except for the period from October 10 through December 4, 1997, his cell location would preclude the ability of another inmate writing and passing a note to or from the applicant. (V 5, pp 6; 26-27). Notes written in Spanish bearing the name of the applicant were passed to jail personnel during said period, said

      testified that in his opinion the applicant did not put forth his best effort in the testing due to "motivational variables" or malingering. (V 5, pp 75-76; 116; 123; 177).

5. Dr. Coons testified regarding questions about adaptive behavior issues with the applicant's cultural group, that in his opinion the applicant's skills in communication, self care, home living, social skills, community use, self direction, health and safety, functional academics, leisure, and work, were appropriate and thus did not support a finding of mental retardation. (V 5, pp 80-90; 199-200; 201; 205; 208; 210).

6. ~~In summary, this Court finds Dr. Coons' opinions to be more credible and trustworthy than those of Dr. Puente and Dr. Martinez.~~  *SBA*

## CONCLUSIONS OF LAW

The Court finds, as a result of the findings of fact as set forth above dealing with the issue of mental retardation, as follows:

1. The applicant was not mentally retarded because the evidence failed to show that the applicant had a significantly subaverage general intellectual functioning.

2. The level of the applicant's intellectual functioning is insufficient to support a finding of mental retardation. Further, there was no evidence of significant limitations in adaptive functioning in any of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health or safety.

3. The court further finds that there is no credible evidence that any mental retardation manifested during the developmental period, or at any time prior the applicant being 18 years of age, or any other age.

4. The applicant's expert, Dr. Puente testified that he discounted various factual accounts by witnesses dealing with the applicant's actions prior to being arrested and identified as not being significant indicators of adaptive behavior. (V 4, pp 190-205). ~~Dr. Puente, improperly applied the law in his analysis by considering adaptive behavior only prior to 18 years of age to the exclusion of current~~

~~adaptive behavior, thus making his opinion unreliable.~~ (V.4, pp.189- S/M
~~190).~~

5. The totality of the circumstances, from the position of the trial court and the jury as trier of fact, supports the determination, which this court hereby concludes, that the applicant was not mentally retarded, and thus the issue of unconstitutional execution of a person of such a class is not presented herein.

SIGNED this the _20_ day of March, 2008.

_____
JUDGE PRESIDING

Copies to:

District Attorney

Honorable Richard Langlois
217 Arden Grove Street
San Antonio, Texas 78215

Morris H. Moon